IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

```
IN RE:                         )
                               )    Chapter 7
SONYA R. CLAYTON,              )
                               )
    Debtor.                    )    Bankruptcy No. 05-06599
-------------------------------
DAVID P. BENDERSON,            )
                               )    Adversary No. 06-9027
    Plaintiff,                 )
                               )
vs.                            )
                               )
SONYA R. CLAYTON,              )
                               )
    Defendant.                 )
```

**ORDER RE OBJECTION TO DISCHARGE OF DEBT**

The above-captioned matter came on for trial on May 11, 2006 pursuant to assignment.  Plaintiff David P. Benderson appeared in person pro se.  Debtor/Defendant Sonya R. Clayton appeared in person with Attorney Jan McCool.  Evidence was presented after which the Court took the matter under advisement.  The Court did not request briefs and this matter is ready for resolution.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) and (J).

**STATEMENT OF THE CASE**

Plaintiff leased rental property to Debtor under a written rental agreement.  Plaintiff asserts Debtor entered into the rental agreement with the intent to defraud and induced Plaintiff to rent her the property.  Debtor denies any fraud and asserts that the debt, if any, to Plaintiff should be discharged.  Alternatively, Debtor denies she caused any damages asserted by Plaintiff.

**FINDINGS OF FACT**

In August 2004, Debtor Sonya Clayton contacted Plaintiff David Benderson for the purpose of renting property located at 236 34th Street Drive SE in Cedar Rapids, Iowa.  The parties agree that they held a discussion toward the end of August 2004.  As a result of that conversation, Plaintiff provided Debtor with a residential rental application marked as Court's Exhibit 1.

This application contains general personal information about the potential renter.  In addition, it contains a request for information concerning Debtor's last residence and the name of her landlord and a telephone number.  The parties agree that Debtor completed this application in the presence of Plaintiff. Debtor wrote the name Rebecca Cullen with a telephone number of 929-6344 as the name of her landlord.  Debtor executed the application and, subsequently, Plaintiff called Rebecca Cullen who provided a positive recommendation for Debtor.

    Plaintiff testified that, based upon this recommendation, he entered into a rental agreement which was executed on August 31, 2004 and marked as Court's Exhibit 2.  The term of the lease was from September 15, 2004 to September 14, 2005 for a monthly rental of $650 to be paid on the 14th of each month.  In addition, Debtor was to pay $650 as a rental deposit which was to be refunded at the end of the lease after deduction for any unpaid rental and/or damages in excess of normal wear and tear.

    Debtor moved into the premises and occupied the rental space for the entire period.  The exact date when Debtor vacated the premises is somewhat unclear.  However, the Court concludes that Debtor vacated the premises shortly before the termination of the lease on September 14, 2005.  The Court also finds that, though Debtor did not give any formal notice of termination, the lease did expire on September 14, 2005 and Plaintiff was at the premises during this period and had actual knowledge of Debtor's imminent departure from the premises.

    Plaintiff asserts that Debtor fraudulently provided the name of Rebecca Cullen as the name of her prior landlord.  Rebecca Cullen provided a positive recommendation for Debtor and, based upon this recommendation, Plaintiff rented the premises to Debtor.  Plaintiff subsequently discovered that the real landlord, at the time of execution of the rental application, was Ronald O'Brien.  Mr. O'Brien did not provide a positive reference for Debtor and Plaintiff now takes the position that, if the real landlord had been named in the rental application, he would not have rented this duplex to Debtor because of the negative recommendation of Mr. O'Brien.  The entire adversary proceeding is premised upon this alleged fraudulent representation. Plaintiff asserts that he was provided fraudulent information on the rental application upon which he relied in renting these premises to Debtor.  He also alleges that Debtor knew the representations were false when made and that Debtor made the representations with the intent or purpose of deceiving Plaintiff.  Plaintiff asserts that, as a result of this false representation, he sustained damages.

    Both parties are in agreement that Rebecca Cullen was not, in fact, Debtor's landlord at the time she completed the rental application.  However, the parties disagree as to how her name came to be placed on this application as landlord.  Debtor states that she was seeking alternative living arrangements because she separated from her husband.  At that time, her husband was going to continue to reside at the marital rental home in Marion, Iowa.  The landlord for the Marion rental was Ronald O'Brien.  Debtor felt that she could not get a fair reference from Mr. O'Brien.  She testified that she informed Plaintiff of this fact and he consented to her putting a personal reference on the application instead of her present landlord.  Debtor states that Plaintiff was aware that Rebecca Cullen was not her landlord and, therefore, there was no misrepresentation.  Plaintiff, however, testified that he presented the rental application to Debtor and that it is a self-explanatory form.  He testified that no conversation occurred between himself and Debtor in which he consented to Debtor putting the name of someone other than her landlord on the application.  Plaintiff testified that he assumed Mrs. Cullen was Debtor's landlord and his conversation with Ms. Cullen provided no information which would lead him to believe otherwise.  Plaintiff testified that he relied on the representation that the name of Debtor's landlord was Rebecca Cullen until he discovered otherwise much later.

    Finally, Plaintiff asserts that, as a proximate result of Debtor's fraudulent representation, he suffered damages in the amount of $2,830.  These damages are set out in Court's Exhibit 4 which is a hand-written statement by Plaintiff delineating the damages.  A substantial portion of the damages consist of unpaid rent.  A large portion of the remaining damages consist of costs to clean and repair the duplex after it was vacated by Debtor.  Debtor contests much of the damages asserted by Plaintiff.  The Court will discuss damages subsequently in this opinion as necessary.

## CONCLUSIONS OF LAW

    Plaintiff asserts amounts owed by Debtor are excepted from discharge under § 523(a)(2)(fraud or false pretenses).

    Section 523(a) states, in pertinent part:

> (a) discharge under 727 . . . of this title does not discharge an individual debtor from any debt-
>
>    . . .

>    (2) for money, property, services, or an
>    extension, renewal, or refinancing of credit, to
>    the extent obtained by-
>
>        (A) false pretenses, a false representation,
>        or actual fraud,. . .

As the primary goal of the Bankruptcy Code is to provide honest debtors with a "fresh start," exceptions to discharge are generally construed narrowly against the creditor and liberally for the debtor. In re Kline, 65 F.3d 749, 751 (8th Cir. 1995); In re Van Horne, 823 F.2d 1285, 1287 (8th Cir. 1987). Plaintiff has the burden of proving the elements of a claim under § 523 by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 286-87 (1991).

Section 523(a)(2)(A) excepts a debt from discharge if it is obtained by "false pretenses, a false representation, or actual fraud." Five elements must be satisfied before a debt will be excepted from discharge under § 523(a)(2)(A): (1) the debtor made false representations; (2) the debtor knew the representations were false at the time they were made; (3) the debtor made the representations with the intention and purpose of deceiving the creditor; (4) the creditor justifiably relied on the representations, Field v. Mans, 615 U.S. 59,72 (1995); and (5) the creditor sustained the alleged injury as a proximate result of the representations having been made. Van Horne, 823 F.2d at 1287. Additionally, § 523(a)(2) has been found to require that the debt arise from the debtor's fraudulent acquisition of money, property, services or credit, or that the debtor obtain some benefit through the fraud or misrepresentation. In re Mauer, 256 B.R. 495, 500 (B.A.P. 8th Cir. 2000); In re Bonefas, 41 B.R. 74, 77 (Bankr. N.D. Iowa 1984)("The initial question to be answered for a § 523(a)(2) dischargeability complaint is whether the debtor actually obtained any money, property, services or an extension, renewal or refinance of credit."). Section 523(a)(2)(A) requires the creditor to prove the debtor's state of mind. The second element of § 523(a)(2)(A) requires that the debtor knew the representations were false at the time they were made, and the third element of (a)(2)(A) requires that the debtor intended to deceive the creditor.

## ANALYSIS

Dischargeability of this debt ultimately revolves around one simple factual determination – whether Debtor made a false representation regarding the identity of her prior landlord. In that regard, Debtor has admitted much. She admitted that the

4

name inserted in the residential rental application as her previous landlord was not in fact her landlord. She has admitted that she was aware that this line required the name of her landlord and that she intentionally put someone else's name in that blank. She also testified that she knew, or at least assumed, that her prior landlord, Ronald O'Brien, would not provide her with a positive recommendation. However, Debtor asserts that these facts are not determinative because she orally discussed them with Plaintiff and he allowed her to put the name of some other individual in this blank as a recommendation. Plaintiff denies such a conversation.

Ultimately, the Court must determine its conclusion from competing versions of this event. It is the conclusion of this Court that Debtor intentionally substituted the name of another individual rather than her landlord for the foregoing reasons as admitted in her testimony. It is unlikely that Plaintiff, as a potential landlord, would waive information regarding Debtor's present landlord, particularly after having been informed that the landlord may give a negative reference. The most logical conclusion is that Plaintiff would be even more desirous of talking to this individual after this recitation rather than less so. Therefore, the Court concludes, as a fact, that Debtor made a false representation in her residential rental application.

From this record, the Court concludes that Debtor knew the representation was false when it was made and the representation was made with the intention and purpose of deceiving Plaintiff. Her intention was to give a reference with positive information rather than negative. Plaintiff relied upon this representation when he actually called the person listed by Plaintiff. Based upon Ms. Cullen's representations, Plaintiff rented the premises to Debtor. As a result, Plaintiff sustained any alleged injury as a proximate result of the representations. It is the conclusion of this Court that Plaintiff has established the non-dischargeability of this debt under § 523(a)(2)(A) by a preponderance of the evidence. The remaining issue is to determine the appropriate amount of damages, if any.

Court's Exhibit 4 has been presented by Plaintiff as a list of various damages. The Court will briefly go through the respective components which Plaintiff asserts total the sum of $2,830.

The first element is unpaid rent. Plaintiff asserts that Debtor owed the total amount of $1,816.66 in unpaid rent at the time she vacated the premises. However, Plaintiff's determination of this amount is faulty in numerous particulars.

5

Court's Exhibit 2 is the actual rental agreement. It sets forth that the rent shall be $650 per month for a period from September 15, 2004 to September 14, 2005. Rent shall be payable the 15th of each month. Therefore, rent should have been paid in 12 installments of $650 for a total of $7,800. Plaintiff computes the rent in Court's Exhibit 3. In this Exhibit, it appears that he begins the rental payments from the beginning of each month. Therefore, during the period of the 12 month rental agreement, he actually seeks 13 payments. In addition, he seeks rent for October in the amount of $216.66. Therefore, Plaintiff asserts that total rental during the occupancy should be 13 payments of $650 for a total of $8,450 plus additional rental for October of $216.66 for a total of $8,666.66.

The factual record establishes that Debtor largely completed the term of her lease. She moved into the duplex in the middle of September of 2004. The lease terminated by its own terms on September 14, 2005. The Court has already determined, as a fact, that Debtor vacated the premises shortly before the termination date of September 14, 2005 and she did so with the actual knowledge of Plaintiff. Therefore, Plaintiff is entitled to rent of $650 for 12 months, or a total of $7,800.

Plaintiff's additional assertion of a 13th month is erroneous and Plaintiff is not entitled to any rent for the month of October for several reasons. First, the lease agreement ended September 14, 2005 and, factually, Debtor simply was not in these premises in October. Therefore, as to rental, Plaintiff is not entitled to $8,666.66.

The records reflect that Debtor made 10 payments of $650, one payment of $350, and paid $650 as a deposit. Total rental paid by Plaintiff is $6,850, not including the deposit. Therefore, Debtor vacated the premises owing $950 in remaining rent.

In addition to rent, Plaintiff seeks reimbursement for the following items:

   a)   $250 for reimbursement for the filing fee for this
        adversary complaint;

   b)   $50 for reimbursement for filing fee for an action in
        State court in Small Claims;

   c)   $1,000 in labor for cleaning the duplex after it was
        vacated by Debtor; and

6

    d)    $363.34 for various expenses related to the repair of the duplex after it was vacated by Debtor.

The Court has examined these claims. Plaintiff is not entitled as a matter of right to reimbursement for the filing fee for this adversary proceeding. Plaintiff seeks $50 for reimbursement for the small claims filing fee. This Chapter 7 bankruptcy case was filed on October 14, 2005. Plaintiff filed the small claims action while the Chapter 7 bankruptcy was pending in violation of the automatic stay. Plaintiff is not entitled to reimbursement for the small claims filing fee.

Finally, Plaintiff seeks a total of $1,363.64 for labor, materials and costs associated with rehabilitating this duplex after it was vacated by Debtor. Initially, the Court notes that Debtor gave a damage deposit of $650. According to paragraph 3 of the rental agreement, the damage deposit would be refunded less any unpaid rent and/or any damages in excess of normal wear and tear to the premises.

As to the cleaning and damages, Plaintiff testified that his mother provided 15 hours of the labor toward cleaning which was not reimbursed. Additionally, Plaintiff presented to the Court a packet of photographs which he asserts establishes that the duplex was in bad condition when Debtor vacated the premises. Debtor asserts that Plaintiff was on or around the premises when she was vacating and these photographs were actually taken during the time she was moving and do not accurately reflect the final condition of the premises. She asserts that the duplex was relatively clean when she vacated and the photographs do not show that condition. Plaintiff asserts that he took the photos subsequent to Debtor leaving the premises and they reflect the duplex required substantial clean-up and repair.

The Court has had an opportunity to examine these photographs which are collectively marked as Court's Exhibit 5. It is the conclusion of this Court that Debtor's recitation of when these photographs were taken is more plausible. While Plaintiff asserts that these photos reflect the duplex in shambles, the photographs actually show more than that. A careful examination of the photos reflect items which a tenant would not leave behind. The photos reflect certain items of furniture and other personal property which a reasonable tenant would take when moving out. Most telling, the photos show bicycles which appear to be new or almost new. It is almost impossible to believe that a tenant who has already abandoned these premises would leave behind the children's bicycles. The Court concludes that the photographs do not accurately reflect

the condition of the final state of the premises when Debtor moved out but reflect an interim condition not truly reflective of the final condition.

Additionally, the photographs in evidence reflect that the total amount of material removed by Plaintiff and taken to the dump are set out in these photos. The total amount removed was one trailer load of material plus the back of a pickup. The photos reflect that a lot of this material was small furniture items, cardboard, and a mattress. These do not reflect an excessive amount of material removed by a landlord after a year's tenancy. An examination of the various photos also establish carpets which appear somewhat dirty but do not appear overly stained. Photos which show the condition of the walls and baseboards do not establish that this was a tenant who did not take at least moderate care of the premises. The photos do reflect minor damage to a door, a few holes in the wall, and a missing lampshade. However, this is not excessive abuse of this duplex.

Reasonably, the Court would conclude that this duplex needed to have the carpets shampooed and possibly walls painted. There were certain items missing, such as a garage door opener, and disposal fees at the city dump. However, it is the conclusion of this Court that the total sum of $1,363.64 is unrealistic and not supported by the evidence. A landlord must assume a normal amount of wear in an apartment. While there does seem to be some minor damage, it is unfair to say that this is a rental unit that was ransacked prior to a tenant vacating. Once the materials in the pictures were removed, a lot of what remained was ordinary wear and tear. It is the conclusion of this Court that Plaintiff is entitled to damages for labor, repair and cleaning of the duplex in the total amount of $250.

Therefore, in summary, Plaintiff is entitled to unpaid rent in the amount of $950 plus clean-up costs of $250 for a total of $1,200. However, Debtor paid Plaintiff a rental deposit of $650 which is to be applied toward this type of damage. Applying the $350 damage deposit to the total amount of damages reflects a remaining balance of $550. It is the ultimate conclusion of this Court that it is this amount to which Plaintiff is entitled.

**WHEREFORE**, it is the conclusion of this Court that Plaintiff has established by a preponderance of evidence that Debtor made a false statement in violation of § 523(a) which warrants exception from discharge for this claim.

8

**FURTHER**, Plaintiff David Benderson is entitled to judgment against Debtor Sonya Clayton in the amount of $550 which is excepted from discharge.

**FURTHER**, judgment shall enter accordingly.

**FURTHER**, although initially identified as a § 727 claim, this adversary proceeding concerns § 523(a)(2). Debtor is entitled to a discharge of her remaining debts and the Clerk's office is directed to enter the discharge in Debtor's bankruptcy case, No. 05-06599, immediately.

DATED AND ENTERED: May 22, 2006

PAUL J. KILBURG
CHIEF BANKRUPTCY JUDGE